```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE MIDDLE DISTRICT OF FLORIDA
                          OCALA DIVISION

                   Case No. 5:02-cr-51-Oc-10GRJ

                         April 21, 2004
                          Ocala, Florida


UNITED STATES OF AMERICA,

         Plaintiff,

vs.

CHARLES NELOMS,

         Defendant.
_____/




              TRANSCRIPT OF SENTENCING HEARING
        BEFORE THE HONORABLE WM. TERRELL HODGES,
            SENIOR UNITED STATES DISTRICT JUDGE




Appearances of Counsel:

    For the Government:      Mr. Dale Robert Campion
                             Mr. Daniel C. Irick

    For the Defendant:       Mr. Russell Jay Williams



    Reported by:             Dennis Miracle, Court Reporter
```

**Dennis Miracle, Court Reporter**
Affiliated with Joy Hayes Court Reporting
(352) 726-4451 * Inverness, Florida

P R O C E E D I N G S

THE COURT: All right. I will now call the case of the United States against Charles Neloms, which is Case Number 02-criminal-51-Ocala.

Mr. Campion, you're here for the United States?

MR. CAMPION: I am, Your Honor.

Also, Daniel Irick of the Orlando office of the U.S. Attorney's Office is here. He is here on a related matter.

THE COURT: All right. Thank you.

And, Mr. Williams, you're now representing Mr. Neloms, I believe?

MR. WILLIAMS: Yes, I am, Judge.

THE COURT: I take it that is Mr. Neloms seated with you there at counsel table?

MR. WILLIAMS: It is, sir.

THE COURT: I have before me the presentence report of the probation officer which reflects that the defendant last appeared before Magistrate Judge Jones for purposes of entering a plea of guilty on May 30th of 2003 pursuant to a formal written plea agreement he had made with the United States, a copy of which had been placed of record.

The essential terms of the plea agreement were that the defendant would enter a plea of guilty to the

1 offense charged in Count One of the Indictment with the
2 understanding, as stated in the plea agreement, first of
3 all, that the United States Attorney's Office for this
4 district would not seek to charge the defendant with
5 committing any other federal criminal offenses arising out
6 of the conduct which supported the pending Indictment.
7 Next, it was provided in the plea agreement that
8 the government would agree in terms of application of the
9 United States Sentencing Guidelines to the defendant's case
10 to a three-offense-level reduction for the defendant's
11 acceptance of responsibility for his criminal conduct as
12 manifested, at least in part, by his plea of guilty to the
13 offense charged in Count One.
14 It was next provided in the plea agreement that,
15 again, with respect to the application of the sentencing
16 guidelines to the offense of conviction that the base
17 offense level applicable to the case should be established
18 at level 34.
19 And in that respect, I note as an aside that the
20 probation officer at Paragraph 14 of the presentence report
21 has determined that the appropriate base offense level is
22 level 34.
23 I said Paragraph 14; I should have said Paragraph
24 13 of the presentence report.
25 The plea agreement then provided that the

1  defendant should not receive either an aggravating or a
2  mitigating role adjustment under Chapter Three of the
3  guidelines, and I note in that respect that the probation
4  officer at Paragraph 16 of the report has made no role
5  adjustment for the defendant's relative culpability in this
6  case.
7          However, the probation officer has permitted -- or
8  has suggested a two-offense-level reduction because of the
9  defendant's eligibility for that treatment under the
10 so-called safety valve provision of Section 2D1.1 of the
11 guidelines.
12         The plea agreement then provided that the
13 defendant would cooperate fully with the United States in
14 its ongoing investigation of the circumstances surrounding
15 the case and perhaps other matters; and the government
16 agreed, if the defendant's cooperation should rise to the
17 level, in its view, of substantial assistance, that a
18 motion would be made for a downward departure under part
19 5K1 of the guidelines.
20         And as an aside on that subject, I note that the
21 United States has filed a motion for downward departure in
22 this case suggesting that the defendant receive a
23 four-level reduction because of his substantial assistance.
24         Then finally, in terms of its essential
25 provisions, the plea agreement provided that the defendant

1  would forfeit to the United States, number one,
2  approximately $250,000 in narcotics proceeds; two, the sum
3  of $34,995 in United States currency which had been seized
4  by the DEA during the search of the defendant's residence
5  on or about July 23, 2002, and finally the forfeiture of an
6  additional sum of $150,000 in lieu of possible forfeiture
7  of real property located at 834 Northwest Tenth Terrace,
8  Fort Lauderdale, Florida, and 840 Northwest Tenth Terrace,
9  Fort Lauderdale, Florida.
10         Those, I believe, were all of the essential terms
11 of the plea agreement.  And after conducting the proceeding
12 required by Rule 11, the Magistrate Judge recommended that
13 the defendant's plea of guilty to the offense charged in
14 Count One of the Indictment should be accepted.
15         And later, in the absence of any objection, I did
16 accept the defendant's plea, adjudged him to be guilty and
17 scheduled a sentencing hearing for this afternoon.
18         In the meantime, the probation officer conducted
19 his presentence investigation and then prepared and
20 submitted to the parties and to me a copy of his report to
21 which I have been making reference which now includes also
22 the addendum under Rule 32 reflecting that neither party
23 has any objections to the presentence report in its present
24 form.
25         Is all of that correct, Mr. Campion?

1      MR. CAMPION:  Yes, Your Honor.

2      THE COURT:  Mr. Williams?

3      MR. WILLIAMS:  Yes, sir.

4      THE COURT:  All right.  Then I will now adopt and confirm the presentence report of the probation officer as the Court's findings of fact and conclusions of law relating to the imposition of sentence in this case finding more particularly, as did the probation officer at Paragraph 13 of the report, as previously stated, that the base offense level applicable to the offense of conviction should be level 34; that the defendant is entitled to a two-level reduction by virtue of meeting the criteria established for the so-called safety valve provision, and he's then entitled to an additional three levels in reduction by virtue of his acceptance of responsibility, which produces a total offense level of 29.

The government has moved, then, for a downward departure of four levels because of the defendant's substantial assistance to the United States as described in the motion, and I will grant that motion and will depart downwardly an additional four offense levels as suggested in the government's motion because of the defendant's substantial assistance.

That would bring the case to offense level 25, and the probation officer then determined in the report that

1   the defendant has no prior criminal history points and
2   remains in criminal history category one.
3          And at offense level 25, criminal history
4   category one, the defendant is subject to a term of
5   commitment of not less than 57 nor more than 71 months to
6   be followed by three to five years of supervised release
7   and the possibility of a fine or other financial sanctions
8   as elsewhere set out in the report.
9          So given those findings, Mr. Williams, would you
10  like now to be heard in allocution concerning the sentence
11  the Court must impose?
12         MR. WILLIAMS:  Yes, sir.  Just briefly, Judge.
13         May I approach?
14         THE COURT:  Please.
15         MR. WILLIAMS:  Judge, briefly, I normally don't
16  have the opportunity to make a statement on behalf of my
17  client.  And, quite frankly, Judge, I haven't represented
18  him all that long, but I have spent an inordinate amount of
19  time with him in a vehicle driving from Fort Lauderdale,
20  Florida, up to Ocala.  So we've had about four, four and a
21  half hours on several occasions to spend together.
22         Mr. Neloms is a very kind gentleman.  He is
23  unfortunately involved in a situation that he probably
24  should have thought better of at the time it happened, but
25  he was looking to get ahead.  And I guess greed would be

1   the better word; it got the better part of him.
2           He's a 60-year-old man who has very, very strong
3   family support.  His wife of 37 years, his children are
4   sitting here today.
5           And, Judge, basically Mr. Neloms is one of the
6   most likeable individuals -- and I can't say that about --
7   I've been practicing 17 years -- I can't say that about a
8   lot of -- probably about any of my clients.
9           And we are asking the Court at this particular
10  point, based upon his advanced age, based upon the fact
11  that he's cooperated with the government and still
12  anticipates additional cooperation with the government,
13  based upon several issues which I believe this Court has
14  been made aware of that occurred in the month of
15  February 2004, and why I am now representing him, to --
16  Mr. Neloms had asked me to ask the Court to depart more
17  than four levels based upon -- even over and above the
18  government's recommendation.
19          His response to me when I told him I didn't think
20  that that would be possible was, "We receive not because we
21  ask not."
22          Even though I have been practicing law -- and I
23  pretty much assume and know what happens in the
24  courtroom -- Mr. Neloms is asking for the Court to impose
25  the most lenient sentence possible at the bottom of the

1 guidelines.

2 I would also ask the Court, Judge -- and I believe
3 I have it attached to the presentence investigation that
4 was recently amended -- an evaluation of Mr. Neloms
5 concerning his past drug usage, and I would ask the Court
6 when sentencing Mr. Neloms to not only sentence him as low
7 as the Court deems applicable but also to sentence him to
8 the RDAP program, which is a 500-hour drug program in
9 the -- within the Bureau of Prisons, and also ask the
10 Court -- and I would ask the Court if it could recommend to
11 the Bureau of Prisons, knowing full well the Bureau of
12 Prisons doesn't have to agree with the recommendation or
13 listen to this Court, he be housed at F.C.I. Coleman, which
14 is local here, and his family could -- is more -- can reach
15 him within a couple of hours. And that's it, Judge. Thank
16 you.

17 THE COURT: All right. Thank you, Mr. Williams.
18 Mr. Neloms, do you have anything you wish to say
19 to me directly and personally in mitigation of the sentence
20 I must impose in your case?

21 THE DEFENDANT: Yes.

22 THE COURT: Come to the lectern, if you would,
23 please.

24 THE DEFENDANT: First of all, Judge, I want to
25 give you thanks for letting me come up and say something to

1   the Court.  I'm sorry about this incident that had taken
2   place.
3           I would like to -- my lawyer was saying my -- you
4   know, on my behalf maybe greed, trying to get things taken
5   care of, taxes behind, bills to be paid.  I got kind of
6   involved in some drugs long back in '85, but I got away
7   from it, didn't even touch it, but pursued it a little
8   later on to try to make a few odds and end, but I find it
9   was no good and end up in this situation here.
10          And I just want to stand before you and tell you
11  that I'm truly sorry about this and to the courts and all,
12  but it had wrecked my life in so many ways.  I've been
13  robbed.  I've been beat up.  I've been kidnapped, my wife
14  and everything else.
15          I'm really sorry to my family.  I know you
16  probably get this from a lot of people, but truthfully I
17  couldn't say it no better from my heart:  If I had this to
18  do over, I will have learned my lesson not to fall back in
19  that trap again.
20          So I'm up here.  As you look upon me, as I said,
21  people's ages is one thing, but I know you have a job to
22  do.  And the best I can say is that I wish you would be
23  lenient on me and considerate, and I just give you all the
24  thanks that there is.
25          I really wanted to look for you -- to tell you

1   that I want probation, but I'm going to leave it up to you.
2   You have the power in your hands, but thanks again.
3           THE COURT:  Mr. Campion, do you have any comments
4   to make for the United States?
5           MR. CAMPION:  Your Honor, first, the government
6   would not object to a recommendation to F.C.I. Coleman.
7           The government would not object to a
8   recommendation of the inpatient drug treatment program of
9   the Bureau of Prisons.
10          I don't know about the name of the particular
11  program referenced by defense counsel, but certainly we
12  would not be opposed to a recommendation of drug treatment.
13          Second, Your Honor, I wanted to point out, on the
14  request for the Court to depart downward in a greater
15  number of levels than four levels, that the downward
16  departure granted by the Court of four levels does reflect
17  a reduction in the defendant's exposure of approximately
18  33 months, or 34 percent, which is a fairly significant
19  reduction, if you will, in his exposure to sentencing.
20          And, secondly, this defendant has also had the
21  benefit of the safety valve application and so, therefore,
22  would avoid anyway the ten-year mandatory minimum, which
23  otherwise would be called for under the law.
24          So he's already received the benefit of his
25  bargain, if you will, and I think that a guidelines

1  sentence within the -- near the midpoint of that guideline
2  range would be appropriate for the Court to consider
3  sentencing him to.
4        The second thing that I wanted to mention,
5  Your Honor, is that the Court had entered a personal money
6  judgment finding forfeiture was warranted in the amount of
7  $400,000 due to the defendant receiving narcotics proceeds
8  in approximately that amount, and I would just ask that the
9  Court also include that amount in the sentence and in the
10 allocution as the appropriate forfeiture in this case at
11 this time.  Your Honor, thank you very much.
12       THE COURT:  Well, no other judgment has yet been
13 entered with respect to the forfeiture, I take it,
14 Mr. Campion, correct?
15       MR. CAMPION:  No other judgment?  That's correct.
16       THE COURT:  So the government is seeking to
17 include in the judgment of commitment provisions for
18 forfeiture as set out in Paragraph 10 of the presentence
19 report, as I would understand it?
20       MR. CAMPION:  Yes, Your Honor.
21       THE COURT:  All right.
22       MR. WILLIAMS:  May I respond, Judge, briefly to
23 that?
24       THE COURT:  Yes.  What do you say, Mr. Williams?
25       MR. WILLIAMS:  Judge, the plea agreement reflects

1 $250,000 to be paid within 30 days of sentencing and then
2 $50,000 to the balance of $150,000 to begin 2005, 2006 and
3 whatever the final payment with interest would be in 2007.
4       What I -- and I don't know how to dance around
5 this, Judge -- is that the $250,000 pursuant to what
6 Mr. Neloms had advised me and what he has advised the
7 government with documentation as well has been paid to his
8 previous lawyer. That apparently never made it into the
9 government coffers.
10       I don't know where that's going right now. We met
11 with the government attorneys -- a government attorney this
12 morning in an effort to try to ascertain that.
13       So I don't know if -- if -- clearly $150,000 would
14 be the -- would be what -- in my opinion, what would still
15 be owed. However, we have some extenuating circumstances,
16 as the Court has been made aware of in the past, concerning
17 that 250,000. And I don't know what would happen if the
18 Court includes 400,000 in total in the judgment and
19 commitment.
20       THE COURT: Well, it seems to me, Mr. Williams --
21 and I am at least vaguely and generally aware of the
22 circumstances you've described -- it seems to me at this
23 somewhat uncertain stage of the proceedings as it relates
24 to the forfeiture of assets what the Court should do is to
25 simply follow and apply the plea agreement and include the

1  aggregate of those numbers in the judgment.  Then if
2  subsequent events suggest that the defendant is entitled to
3  some relief with respect to that, it can always be sought
4  by way of proper motion.
5       MR. WILLIAMS:  Thank you, Judge.
6       THE COURT:  Well, I do have the benefit of the
7  probation officer's usually thorough presentence
8  investigation report so I am familiar with the
9  circumstances surrounding the commission of the offense of
10 conviction.
11      The offense, of course, is an extremely serious
12 one and one with respect to which the defendant was and is
13 subject to a substantial term of commitment.
14      However, as Mr. Campion points out in his remarks,
15 the defendant has received some rather substantial
16 reductions by way of leniency in view of the application of
17 the safety valve provision which reduced his exposure by
18 two offense levels, the full allowance for his acceptance
19 of responsibility of three additional offense levels in
20 reduction, and finally the reduction of four offense levels
21 by way of downward departure taking into account his
22 substantial assistance.
23      So it seems to me that a sentence at or near the
24 low end of the applicable sentencing range is certainly an
25 appropriate one in this case and is the sentence that I

1   will impose.
2          It is, therefore, the judgment and sentence of the
3   Court in the case of the United States against Charles
4   Neloms that the defendant should be and is hereby remanded
5   to the custody of the Bureau of Prisons for commitment for
6   a term of 60 months or until otherwise discharged according
7   to law, to be followed by a term of four years' supervised
8   release under the standing terms and conditions of such
9   release normally imposed in this court.
10         In view of the forfeitures provided for in the
11  plea agreement, which will be included in the judgment,
12  that is to say, a forfeiture in the amount of 300 --
13  rather, $250,000 representing narcotics proceeds, an
14  additional $34,995 representing the currency seized at the
15  time of the defendant's search, and an additional $150,000
16  in lieu of forfeiture of the real property identified in
17  the plea agreement, I will waive the imposition of any
18  other financial sanctions or fines and, as I say, include
19  those forfeitures in the judgment.
20         I shall also necessarily impose a special
21  assessment of $100 with respect to the offense of
22  conviction which is mandatory.
23         I will include also in the judgment of commitment,
24  as I have been requested to do, first a recommendation that
25  the defendant be designated for the service of the

1  commitment component of the sentence at the correctional
2  institution at Coleman and, secondly, that he be given the
3  opportunity to participate in counselling and treatment for
4  drug dependency or drug abuse during the course of his
5  incarceration.
6      I advise and counsel the defendant that he does
7  have ten days from today within which to file with the
8  clerk a notice of appeal if he wishes to seek appellate
9  review of any adverse determination I may have made during
10 the course of this hearing and assuming that his right to
11 appeal would survive the provisions of the plea agreement.
12     I further advise and caution him that, if he does
13 wish to take an appeal and lacks the funds with which to
14 employ counsel for that purpose, he may apply to the Court
15 for the appointment of counsel under the Criminal Justice
16 Act.
17     And since under the terms of the governing statute
18 commitment is required at this time, the defendant will be
19 remanded to the custody of the Marshal for the execution of
20 the sentence.
21     Is there anything else to be taken up in this case
22 today as far as the government is concerned, Mr. Campion?
23     MR. CAMPION: Your Honor, may I just ask
24 Mr. Svensen one quick question?
25     THE COURT: Surely.

1      MR. CAMPION:  Thank you.
2      (Pause.)
3      MR. CAMPION:  No, nothing further, Your Honor.
4  Thank you.
5      THE COURT:  Anything further, Mr. Williams?
6      MR. WILLIAMS:  No, Judge, just the drug program.
7  I know -- I think it's the RDAP program.  I did some
8  research on the Internet and found out that's the program,
9  the 500-hour program.
10     THE COURT:  All right.  Well, you might include
11 that reference, Madam Clerk, in the judgment, then, please.
12     MR. WILLIAMS:  Thank you, Judge.
13     THE COURT:  All right.  Then the hearing is
14 adjourned.  I'll take a recess until four o'clock.
15     (Thereupon, the proceedings in this case for this
16 date were concluded at this time.)
17
18                    C E R T I F I C A T E
19 I hereby certify that the foregoing is an accurate
20 transcription of the proceedings in the above-entitled
21 matter.
22
23   S/Dennis Miracle                    April 8, 2015
24 _____              _____
25    Dennis Miracle                         Date

**Dennis Miracle, Court Reporter**
Affiliated with Joy Hayes Court Reporting
(352) 726-4451 * Inverness, Florida